UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/5/2019

-------------------------------------------------------------X

AFERDITA COLLAKU,                                    :
                                                     :
                                  Petitioner,        :
                                                     :          18-CV-4054 (VEC)
                  -against-                           :
                                                     :          OPINION AND ORDER
TEMCO SERVICE INDUSTRIES, INC.,                      :
                                                     :
                                  Respondent.        :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Petitioner Aferdita Collaku, a former employee of Respondent Temco Service Industries, Inc. ("Temco"), brought this petition in New York state court under Section 7511 of the New York Civil Practice Law and Rules, seeking to vacate an arbitrator's decision issued pursuant to a collective-bargaining agreement ("CBA"). Dkt. 5 ex. 2 (Verified Pet.). Temco removed the petition to this Court, asserting that although Petitioner's claim is styled as one arising under state law, it is actually a federal cause of action "over which this Court has jurisdiction under Section 301(a) of the Labor Management Relations Act ('LMRA')" and is thus removable to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. Dkt. 5 (Am. Notice of Removal) at 2-3. Petitioner's motion to remand the case to New York Supreme Court, Dkts. 11-12, is DENIED.

Consistent with this Court's order, *see* Dkt. 10, the parties' briefing on the remand motion also addressed whether Respondent defaulted on this petition while the case was in state court and, if so, whether Respondent must formally move to vacate the default under Fed. R. Civ. P. 55(c) and 60(b) to further litigate this case. For the reasons that follow, the Court holds that Respondent did not default while in state court and that any motion to vacate is unnecessary.

# BACKGROUND

Although the parties dispute the veracity of Petitioner's underlying grievances against Respondent, the procedural history of this case is generally undisputed.

Petitioner was employed by Respondent as a cleaner, supervisor, and foreperson between 2004 and 2014. Dkt. 5 ex. 2 (Verified Pet.) ¶ 11. In November 2014, Petitioner sued Respondent in New York Supreme Court alleging that Respondent had violated her rights under the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL"). *See* Dkt. 5 ex. 5 (Summons & Compl.). Respondent moved to compel arbitration of Petitioner's claims, asserting (1) that Petitioner was subject to a CBA between a labor union representing Petitioner and a multi-employer bargaining group of which Respondent was a member, and (2) that Petitioner's NYCHRL and NYSHRL claims were subject to the mandatory-arbitration clause contained in the CBA. *See* App. A (State Court Mem. in Supp. of Mot. to Dismiss) at 2-3, 6-8.[1] The parties then stipulated to submit Petitioner's claims to arbitration pursuant to the CBA and to stay Petitioner's lawsuit pending the outcome of arbitration.[2] *See* Dkt. 13 ex. A (stipulation).

Arbitration proceedings took place on two of Petitioner's NYCHRL claims only.[3] *See* Dkt. 12 (Mem. in Supp. of Mot. to Remand) at 2. After taking evidence, the arbitrator decided that Respondent had not violated the NYCHRL and dismissed Petitioner's claims. *See* Dkt. 5 ex.

---

[1]      The Court takes judicial notice of Respondent's motion. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

[2]      Petitioner's submissions in this Court appear somewhat agnostic on whether the arbitration was actually mandated by the CBA. Her petition, however, confirms that the arbitration was "conducted pursuant to a collective bargaining agreement with a mandatory arbitration clause between Respondent Temco Service Industries, Inc. . . . and its employees, including Petitioner Aferdita Collaku." Dkt. 5 ex. 2 (Verified Pet.) ¶ 2; *see also id.* ¶ 33 (acknowledging that "the parties engaged in mandatory arbitration").

[3]      It appears that Petitioner abandoned her NYSHRL claims and all but two of her NYCHRL claims before the arbitration occurred. The abandoned claims are not at issue here.

4 (Op. & Order).  The arbitrator's reasoning is irrelevant to resolving Petitioner's motion to remand, so the Court will not recount it here.

On April 6, 2018, Petitioner filed this action in New York Supreme Court, requesting that the arbitrator's decision be vacated under N.Y. C.P.L.R. section 7511(b)(1).  Dkt. 5 ex. 2 (Verified Pet.).  Petitioner's notice of the petition purported to set a deadline of April 30, 2018, for Respondent to respond, *see id.* ex. 1 (Notice of Pet.) at 1, but Respondent did not appear or file any responsive papers by that date, *see* Dkt. 5 (Am. Notice of Removal) ¶ 8; Dkt. 14 (Mem. in Opp. to Mot. to Remand) at 9.  Instead, on May 6, 2018, Respondent filed a notice of removal. *See* Dkt. 1 (Notice of Removal).  Respondent's amended removal notice contends that this Court has federal-question jurisdiction because Petitioner's Section 7511 claim challenges an arbitral award issued pursuant to an arbitration agreement contained in a CBA and is, therefore, completely preempted by Section 301 of the LMRA.  *See* Dkt. 5 (Am. Notice of Removal) ¶¶ 4-7.

After an initial pre-trial conference, Petitioner filed this motion to remand, contending that Section 301 does not completely preempt her N.Y. C.P.L.R. section 7511(b)(1) petition and that this Court therefore lacks subject-matter jurisdiction.  Dkt. 12 (Mem. in Supp. of Mot. to Remand).  Petitioner does not contest the timeliness of the removal or Respondent's compliance with the procedures laid out in 28 U.S.C. §§ 1441 and 1446.

## DISCUSSION

"The federal courts are under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), and must do so before reaching the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998).  The Court therefore addresses first whether it has subject-matter jurisdiction over this petition and thus whether Respondent properly removed it from state court.  It will then turn to whether

Respondent defaulted in state court and, if so, whether Respondent must move to vacate that default in order to contest Collaku's petition in this Court.

**A. Subject-Matter Jurisdiction**

Because Respondent removed this case from state court, it "bears the burden of proving that the case is properly in federal court." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The Court concludes that it has subject-matter jurisdiction over this petition under Section 301 of the LMRA and thus that Respondent properly removed the action from state court to this Court under 28 U.S.C § 1441.

For an action properly to be removed to federal court, the action must be one that "could have been originally filed in federal court"—that is, one over which a federal court could have exercised original federal subject-matter jurisdiction. *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997) (citing 28 U.S.C. § 1441(a)). In this case, because Respondent has not demonstrated any basis for diversity jurisdiction under 28 U.S.C. § 1332, removal was proper only if the case presents a federal question under 28 U.S.C. § 1331.

Ordinarily, of course, the "presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "Thus, a plaintiff may avoid federal jurisdiction by pleading only state law claims, even where federal claims are also available, and even if there is a federal defense." *Fax Telecommunicaciones Inc. v. AT&T*, 138 F.3d 479, 486 (2d Cir. 1998) (citing *Caterpillar*, 482 U.S. at 392-93). A defendant is, in any case, free to assert that the plaintiff's state-law claims are preempted by federal law, but the availability of that defense does not by itself give rise to federal-question jurisdiction. *Cooper*

*Union Fed'n of Coll. Teachers, Local 2163 v. Cooper Union for the Advancement of Sci. & Art*, No. 18-CV-5891, 2019 WL 121000, at *2 (S.D.N.Y. Jan. 7, 2019).

"There is an exception, however, to the general rule that the plaintiff is 'master of the claim.'" *Whitehurst v. Staten Island Univ. Hosp.*, No. 18-CV-1090, 2018 WL 2744710, at *4 (E.D.N.Y. June 6, 2018) (citing *Caterpillar*, 482 U.S. at 392). Under the "artful-pleading doctrine," "a plaintiff cannot avoid removal . . . by framing in terms of state law a complaint the 'real nature of which is federal, regardless of plaintiff's characterization[,]' or 'by omitting to plead necessary federal questions in a complaint.'" *Id.* (alterations omitted) (quoting *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 27-28 (2d Cir. 1988)).

"The artful-pleading doctrine includes within it the doctrine of complete preemption," *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005), under which a federal statute's preemptive force is "so extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," *Caterpillar*, 482 U.S. at 386 (internal quotation marks omitted). Thus, if a plaintiff "raises . . . a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Sullivan*, 424 F.3d at 272. Section 301 of the LMRA (29 U.S.C. § 185) is one of only three statutes that the U.S. Supreme Court has held possesses "the requisite extraordinary preemptive force to support complete preemption," *id.*, and the only such statute that could possibly apply to this action. Thus, for this Court to have subject-matter jurisdiction over this petition, the state-law cause of action the petition asserts must be completely preempted by Section 301(a) of the LMRA.[4]

---

[4] 29 U.S.C. § 185(a) provides that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

A state-law claim is completely preempted by Section 301(a) of the LMRA if the claim is either (1) "founded directly on rights created by collective-bargaining agreements" or (2) "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (internal quotation marks omitted); *Vera v. Saks & Co.*, 335 F.3d 109, 115-16 (2d Cir. 2003). Consistent with this principle, a plaintiff covered by a CBA may bring a claim "assert[ing] legal rights independent of that [CBA], including state-law contract rights," without triggering complete preemption under Section 301, "so long as the contract" underlying the claim "is not a [CBA]." *Caterpillar*, 482 U.S. at 396 (emphasis and citation omitted). Section 301, in other words, does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985). Likewise, "the need merely to 'consult' or 'refer' to the CBA does not trigger preemption." *Cooper Union Fed'n*, 2019 WL 121000, at *2 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). In contrast, however, "state-law rights and obligations that do *not* exist independently of private agreements" and "as a result can be waived or altered by agreement of private parties" *are* completely preempted by Section 301. *Allis-Chalmers*, 471 U.S. at 213 (emphasis added).

Resolving the parties' jurisdictional dispute requires properly characterizing the nature of the right Petitioner seeks to vindicate. Petitioner asserts that "[a]t no point during the arbitration or [this] proceeding has [she] alleged she was terminated in violation of rights conferred pursuant to a CBA." Dkt. 12 (Mem. in Supp. of Mot. to Remand) at 4-5. Rather, Petitioner says, she "alleges violations of her rights pursuant to the [NY]CHRL—rights that are **not** conferred to her by a contract and do not require an interpretation of any contract." *Id.* at 5. The CBA is thus "entirely irrelevant" to this petition, Petitioner asserts, and Section 301 therefore does not preempt it. Dkt. 15 (Reply in Supp. of Mot. to Remand) at 1. Respondent takes a different view,

pointing out that Petitioner's action "seeks to vacate an arbitration award rendered pursuant to a collective bargaining agreement" and asserting that "[a]ssessment of an award rendered pursuant to procedures and powers outlined in the CBA requires interpretation of the CBA, and thus invokes jurisdiction under § 301." Dkt. 14 (Mem. in Opp. to Mot. to Remand) at 4.  Although the Court disagrees with Respondent's analysis, it agrees with Respondent's ultimate conclusion.

Petitioner's argument elides a critical distinction between her underlying grievance and this action.  Petitioner's November 2014 complaint in state court asserted several claims arising under the NYCHRL and the NYSHRL.  *See* Dkt. 5 ex. 5 (Summons & Compl.) at 11-21.  It nowhere asserted any claim concerning a violation of the CBA or any other contract to which Petitioner may have been subject.  *Id.*  In contrast, her April 2018 petition to vacate the arbitrator's award—the petition now before this Court—contends that the arbitrator's decision on Petitioner's NYCHRL claims was "irrational," "not based in evidence or reason," and "not supported by the record."  Dkt. 5 ex. 2 (Verified Pet.) ¶¶ 33-37.  The two proceedings are fundamentally different: Petitioner's November 2014 complaint sought to vindicate her right not to be discriminated against in violation of the NYCHRL; her present petition seeks to enforce her purported right to an arbitral decision  that is rational and based in evidence and reason.  It does not resolve the jurisdictional question, therefore, to point out that Petitioner "alleges violations of her rights pursuant to the [NY]CHRL" and that those rights "are **not** conferred to her by a contract and do not require an interpretation of any contract."  Dkt. 12 (Mem. in Supp. of Mot. to Remand) at 5.  Petitioner's broader objective is unquestionably to recover for NYCHRL violations she alleges Respondent committed, and the NYCHRL itself undoubtedly "proscribe[s] conduct, or establish[es] rights and obligations, independent of a labor contract."  *Allis-Chalmers*, 471 U.S. at 212.  But the object of *this petition* is to correct a purportedly irrational and groundless decision by the arbitrator who addressed the merits of Petitioner's NYCHRL

claims in the first instance. The relevant inquiry, then, is not whether Petitioner's NYCHRL

rights exist independently of the parties' CBA, but rather whether the arbitrator's alleged

obligation to issue a rational decision based in evidence and reason, *see* Dkt. 5 ex. 2 (Verified

Pet.) ¶¶ 33-37—and Petitioner's corresponding *right* to an arbitral award that is rational and

based in evidence and reason—is one that arises "independent of a labor contract," *Allis-*

*Chalmers*, 471 U.S. at 212, or is "created by" the parties' CBA, *Caterpillar*, 482 U.S. at 395.[5]

     A deep dive into the origins of the arbitrator's purported "rationality obligation," as the

Court will hereafter refer to it, reveals that it does "not exist independently of" the parties' CBA,

*Allis-Chalmers*, 471 U.S. at 213, and that this petition, which seeks to enforce that obligation, is

instead a "claim[] founded directly on rights created by" a CBA, *Caterpillar*, 482 U.S. at 394.

New York courts have long required an arbitrator to reach a rational decision when resolving a

dispute and, consequently, have long recognized their own complementary authority to vacate or

modify an arbitral award that violates that obligation. *See, e.g.*, *Wilkins v. Allen*, 62 N.E. 575,

576 (N.Y. 1902) ("[A] court will not open an award unless perverse misconstruction or positive

misconduct upon the part of the arbitrator is plainly established, or there is some provision in the

agreement of submission authorizing it."). The modern statute governing New York courts'

authority in this area, however—Section 7511(b)—does not mention any rationality obligation.

Instead, by its own terms, Section 7511(b) permits vacatur of an arbitral award only on the

---

[5]     In referring to this obligation as an "alleged" one, the Court does not mean to suggest that arbitrators are free to act irrationally, arbitrarily, and without regard to evidence or reason. Petitioner contends that New York law imposed a duty on the arbitrator rationally to resolve her claims and that the award must be vacated under Section 7511(b) because the arbitrator breached that duty. But if Section 301 of the LMRA completely preempts Petitioner's Section 7511(b) action because it is "founded directly on rights created by collective-bargaining agreements," *Caterpillar*, 482 U.S. at 394, then federal common law displaces New York law with regard to the arbitrator's duties and obligations, and the latter—including its rationality obligation—is inapplicable, *id.* at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."). Whether the arbitrator was obligated to act rationally, then, as that term is understood in the New York state authorities Petitioner cites, *see* Dkt. 5 ex. 2 (Verified Pet.) at ¶¶ 33-37, turns on the complete-preemption dispute at issue here. The Court therefore refers to that obligation as an "alleged" one.

grounds that (1) there was "corruption, fraud or misconduct in procuring the award"; (2) the arbitrator was not impartial; (3) the "arbitrator . . . exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made"; or (4) the parties or the arbitrator failed "to follow the procedure of" arbitration laid out in other parts of the statute. N.Y. C.P.L.R. § 7511(b)(1)(i)-(iv).

New York courts have incorporated the rationality obligation into the third of these provisions, treating an award that is irrational and groundless as one rendered in excess of the arbitrator's power to resolve the parties' dispute. *See, e.g.*, *Nat'l Cash Register Co. v. Wilson*, 171 N.E.2d 302, 305 (N.Y. 1960) ("As to the Company's contention that the arbitrators 'exceeded their powers' within the meaning of section [7511's statutory predecessor] it is enough to point out that . . . arbitrators may be said to have done so only if they gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties.").[6] Put differently, New York courts understand the rationality obligation to be a statutorily-imposed constraint on an arbitrator's power over a dispute that is imputed into the legal instrument (either a private agreement or a statute) from which the arbitrator derives his authority. Like other duties that state law may read into an agreement (the implied duty of good faith and fair dealing being another example), it may be that parties rarely expressly incorporate New York law's rationality obligation into an arbitration agreement. But it is nonetheless a

---

[6]     S*ee also, e.g.*, *Rochester City Sch. Dist. v. Rochester Teachers Ass'n*, 362 N.E.2d 977, 980-81 (N.Y. 1977) ("Although the courts will not disturb an arbitrator's award because of his failure to interpret documents literally or in accordance with substantive principles of law or rules of evidence . . . his power to fashion a remedy is not unlimited. If the arbitrator's award is 'completely irrational' it may be considered misconduct on his part or it may be said that he exceeded his power. The relief which he fashions is circumscribed by the bounds of the relationship between the parties."); *Lentine v. Fundaro*, 278 N.E.2d 633, 635 (N.Y. 1972) ("An award may be vacated under CPLR 7511 . . . where the construction of a document is 'completely irrational' . . . or where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration . . . ."); *In re Shand*, 428 N.Y.S.2d 462, 465 (N.Y. App. Div. 1980) ("The classic interpretation of [N.Y. C.P.L.R. section 7511(b)(1)(iii)] is that the arbitrator will be deemed to have exceeded his power if he gives a completely irrational construction to the parties' governing agreement . . . .").

potent background principle that, under New York law, is automatically integrated into the contract—CBA or otherwise—that gives the arbitrator her power in the first place. To the extent the arbitrator fails to fulfill it, her award is in excess of her authority, and a court has the corresponding power under New York law to annul the award.

Viewed this way, it becomes clear that the principle Petitioner seeks to enforce here—the arbitrator's purported obligation to issue, and Petitioner's corresponding entitlement to, an award that is rational and grounded in evidence and reason, *see* Dkt. 5 ex. 2 (Verified Pet.) at ¶¶ 33-37—is "founded directly on rights created by [the] collective-bargaining agreement[]" between Respondent and Petitioner's union. *Caterpillar*, 482 U.S. at 394. Petitioner's suit under N.Y. C.P.L.R. section 7511(b) is, therefore, completely preempted by Section 301 of the LMRA.[7]

The Court finds further confirmation of this conclusion in the New York Court of Appeals's citation to federal case law regarding the limitations federal common law imposes on an arbitrator's powers pursuant to a CBA and the corresponding authority of a court to review and nullify arbitral awards under Section 301. In *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960), the U.S. Supreme Court clarified that in the labor–management context, the scope of an arbitrator's authority to resolve a dispute is a creature of the parties' CBA and, consequently, a court's authority under federal common law to confirm or vacate the award is a function of whether the arbitrator acted within his CBA-

_____

[7] Respondent proceeds along a somewhat different route, asserting that because this petition to vacate has "its genesis" in an arbitration proceeding undertaken pursuant to a CBA with a mandatory arbitration clause, resolving the petition "requires interpretation of the CBA." Dkt. 14 (Mem. in Opp. to Mot. to Remand) at 5; *see also id.* at 8 ("[W]hat Plaintiff seeks is not vindication of her NYCHRL claims, but reversal of the arbitrator's decision that dismissed her claim within the confines of the rules and procedures of the CBA-mandated forum. This forum and process only exist because of the applicable CBA."). Because the Court concludes that Section 301 preempts this petition because it is "founded directly on rights created by collective-bargaining agreements," *Caterpillar*, 482 U.S. at 394, it need not address whether the petition's resolution is "substantially dependent on analysis of a [CBA]," *id.* (internal quotation marks omitted). These are related but distinct paths to Section 301 preemption; complete preemption under one obviates any need to address the other.

conferred powers when issuing it.[8]  *See Enterprise Wheel & Car Corp.*, 363 U.S. at 597-98

("[A]n arbitrator is confined to interpretation and application of the collective bargaining

agreement; he does not sit to dispense his own brand of industrial justice.  He may of course look

for guidance from many sources, yet his award is legitimate only so long as it draws its essence

from the collective bargaining agreement.  When the arbitrator's words manifest an infidelity to

this obligation, courts have no choice but to refuse enforcement of the award.").  A few months

later, interpreting Section 7511(b)(1)(iii)'s predecessor statute in *National Cash Register Co.*,

171 N.E.2d at 305, the New York Court of Appeals cited *Enterprise Wheel & Car Corp.* in

support of the proposition that an "arbitrator[] may be said to have" "exceeded [his or her]

powers" within the meaning of that provision "only if [he or she] gave a completely irrational

construction to the provisions in dispute and, in effect, made a new contract for the parties."  The

New York Court of Appeals's reliance on *Enterprise Wheel & Car Corp.* in *National Cash

Register* indicates that it understood an arbitrator's rationality obligation under Section

7511(b)(1)(iii)'s predecessor statute to be an implied limitation on the powers bestowed on the

arbitrator by the CBA-embedded arbitration agreement from which she derives her authority, just

as federal common law impliedly obligates an arbitrator not to "dispense his own brand of

industrial justice" but instead requires him to "draw[] [his award's] essence from the collective

bargaining agreement" from which he derives *his* authority, *Enterprise Wheel & Car Corp.*, 563

U.S. at 597.  To attack an arbitrator's award in a labor dispute as irrational under New York law,

then, is essentially to assert that the arbitrator violated a duty implied into the parties' arbitration

---

[8]      The "court" could be a federal court or a state court, so long as the court is applying federal common law to
either (1) a claim pleaded as a state-law claim but completely preempted by Section 301 or (2) a claim expressly
invoking Section 301.  *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990) ("[T]he [Supreme]
Court has made clear that § 301 is a potent source of federal labor law, for though state courts have concurrent
jurisdiction over controversies involving collective-bargaining agreements, . . . state courts must apply federal law in
deciding those claims . . . .").

agreement—and is, therefore, an attack designed to vindicate a right "created by [the] collective-bargaining agreement[]" of which the arbitration agreement is an essential part, *Caterpillar*, 482 U.S. at 395; *see also Enterprise Wheel & Car Corp.*, 563 U.S. at 596 ("[T]he arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process.").

The Court notes that the authorities on which the parties rely do not neatly resolve whether Section 301 of the LMRA creates federal-question jurisdiction over a petition brought under N.Y. C.P.L.R. section 7511 to vacate an arbitrator's award issued pursuant to an arbitration clause that is part of a CBA. It is obvious, as Respondent points out, that Section 301 *can* provide federal-question jurisdiction over a petition to confirm or vacate an arbitral award. *See* Dkt. 14 (Mem. in Opp. to Mot. to Remand) at 6. But none of the cases Respondent cites for that proposition says anything about whether the rationality obligation Section 7511(b)(1)(iii) purports to impose on an arbitrator converts a petition to vacate an award issued after a CBA-required arbitration into a claim "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement," as complete preemption under Section 301 requires, *Caterpillar*, 482 U.S. at 394 (internal quotation marks omitted). Respondents' cases also arose from claims whose resolution would far more obviously require substantial interpretation of a CBA than Petitioner's. *See, e.g.*, *NBCUniversal Media v. Pickett*, No. LA CV17-01404, 2017 WL 4708019, at *1, 4-6 (C.D. Cal. July 19, 2017) (holding that court had Section 301 jurisdiction over a petition to compel arbitration in the first instance pursuant to CBA's arbitration clause); *Basir v. New Carlton Rehab. & Nursing Ctr.*, No. 13-CV-5726, 2015 WL 5579863, at *3-4 (E.D.N.Y. Sept. 22, 2015) (holding that Section 301 preempted petition under N.Y. C.P.L.R. to vacate award on ground that arbitrator rendered "his decision outside of the time constraints set forth in the CBA"). Similarly, Petitioner may be

correct that "[c]ourts routinely hold that allegations based on state law violations are not preempted by Section 301," but none of the cases she cites, *see* Dkt. 15 (Reply in Supp. of Mot. to Remand) at 2, addresses whether Section 301 preempts a state-law claim seeking to vindicate a state-imposed limitation on the authority conferred on an arbitrator by a CBA. The cases she cites are, therefore, inapposite.[9]

The question whether Section 301 of the LMRA completely preempts this particular petition is not cleanly controlled by existing authority. But after examining the nature of the right the petition seeks to vindicate—one which, as discussed, New York law purports to imply into the CBA arbitration clause that gave rise to the arbitrator's authority in the first place—the Court must conclude that the petition is "founded directly on rights created by [a] collective-bargaining agreement[]," *Caterpillar*, 482 U.S. at 394; *see also Allis-Chalmers*, 471 U.S. at 220 ("The right that [the plaintiff] asserts is rooted in contract . . . ."). It is therefore completely preempted by Section 301 of the LMRA, and this Court has federal-question jurisdiction over the petition.[10] *Caterpillar*, 482 U.S. at 393.

---

[9]     Petitioner may very well be correct that in parsing the propriety of the arbitrator's disposition of her NYCHRL claims, the Court would not need to analyze, or even consult, the CBA, which does not supply the substantive rules of decision relevant to the merits of those claims. As noted, however, *see supra* n.7, whether resolution of this petition is "substantially dependent on analysis of a collective-bargaining agreement," *Caterpillar*, 482 U.S. at 394 (internal quotation marks omitted), is irrelevant because the petition is "founded directly on rights created by [a] collective-bargaining agreement," *id.*

[10]     To be clear, the Court's holding is confined solely to N.Y. C.P.L.R. section 7511 petitions seeking to vacate a decision issued by an arbitrator pursuant to an arbitration agreement contained in a CBA on the ground that the decision "exceeded [the arbitrator's] power" within the meaning of Section 7511(b)(1)(iii). The Court expresses no opinion on whether Section 301 of the LMRA preempts petitions brought under other parts of Section 7511 or of the N.Y. C.P.L.R. And, of course, Section 301 has no application to a petition seeking to vacate an award issued pursuant to an arbitration agreement *not* contained in a CBA or similar labor-related contract, or to a petition seeking to vacate an award issued pursuant to a state statute mandating arbitration outside the labor context, *see, e.g.*, *In re Shand*, 428 N.Y.S.2d at 446 (assessing rationality of arbitral award issued pursuant to New York statute "require[ing] insurers to submit to binding arbitration of no-fault claims at the option of the insured").

## B. Default

Having denied Petitioner's motion to remand, the Court turns next to Petitioner's assertion that Respondent defaulted on this petition while it was in state court and is therefore "required to move to vacate the default" in this Court, "just as [Respondent] would be required to do in state court." Dkt. 12 (Mem. in Supp. of Mot. to Remand) at 7.

Petitioner's argument rests on a false premise. Although Respondent concedes that it did not respond to this petition by the return date Petitioner set in her notice of petition, *see* Dkt. 14 (Mem. in Opp. to Mot. to Remand) at 3 n.4 ("[I]t is true that [Respondent] did not respond to [Petitioner's] short-noticed petition in Supreme Court . . . ."), this Court can find no evidence— and Petitioner does not provide any—that Petitioner ever applied for a default or default judgment against Respondent, as New York law requires, *see* N.Y. C.P.L.R. § 3215, let alone that the New York County Supreme Court issued any certificate, judgment, or order noting a default or entering a default judgment.[11] Petitioner repeatedly refers to her petition as having been "marked" as "fully submitted" while in state court, *see* Dkt. 12 (Mem. in Supp. of Mot. to Remand) at 2 ("[O]n May 4, 2018, [the] New York State Supreme Court marked [Petitioner's] Article 75 proceeding as fully submitted."); *see also id.* at 7, but the court's docket reflects no entry to that effect, *see* App. B, and Petitioner offers no documentation of such an order. In the absence of any certificate, judgment, or order in the state court evidencing a default or default judgment against Respondent, there is, quite simply, nothing for Respondent to move to vacate.[12]

---

[11]    The state court's docket—of which the Court takes judicial notice, *see Int'l Star*, 146 F.3d at 70—reflects the entry of a pro forma order dismissing this petition in light of its removal to this Court. *See* App. B. That is, of course, not the kind of default or default judgment to which Petitioner and Rule 55(c) refer.

[12]    Because the Court rejects Petitioner's vacatur argument on other grounds, it need not resolve Respondent's argument (offered without citation to authority) that the petition was improperly noticed under New York law and therefore "defective *ab initio*." Dkt. 14 (Mem. in Opp. to Mot. to Remand) at 2 n.2.

**CONCLUSION**

For the foregoing reasons, Petitioner's motion to remand this case to state court is DENIED. Petitioner's argument that Respondent is "required to move to vacate [a] default," Dkt. 12 (Mem. in Supp. of Mot. to Remand) at 7, is rejected.

Because Petitioner's N.Y. C.P.L.R. section 7511 claim is completely preempted by Section 301 of the LMRA, it "must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220. No later than **February 22, 2019**, each party must submit a letter brief of no more than five pages addressing whether this case should be dismissed with prejudice because Petitioner's only claim is completely preempted by federal law or, in the alternative, whether Petitioner should be granted leave to amend her petition to plead a claim under Section 301 asserting that the arbitrator's decision on her NYCHRL claims exceeded the arbitrator's authority under the CBA's arbitration clause.

**SO ORDERED.**

**Date: February 4, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

# Appendix A

SUPREME COURT OF THE STATE OF
NEW YORK : COUNTY OF NEW YORK
-------------------------------------------- x

AFERDITA COLLAKU,                                    Index No. 161115/2014

                          Plaintiff,

     -against-

                                                     Document Electronically Filed on
TEMCO SERVICE INDUSTRIES,                            December 21, 2014
INC.,

                          Defendant.


-------------------------------------------- x


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Harry Weinberg, Esq.
Law Offices of Harry Weinberg
Attorneys for Defendant
292 Madison Avenue — 16th Floor
New York, N.Y. 10017
Tel. (212) 889-4100
Fax (212) 889-4105

## PRELIMINARY STATEMENT

Defendant Temco Service Industries, Inc. ("Temco"), by its attorneys, hereby submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint ("Complaint"), or, in the alternative, to compel arbitration pursuant to a collective bargaining agreement. For the reasons set forth herein, Temco respectfully submits that it is entitled to judgment dismissing the Complaint as a matter of law.

## BACKGROUND

Plaintiff Aferdita Collaku ("Plaintiff"), a former employee of Temco, purports to allege employment discrimination on the basis of gender discrimination, hostile work environment, national origin and retaliation , race, color, age and national origin under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").[2] *(See* Complaint annexed to Affirmation of Harry Weinberg dated December 21, 2014 ("Weinberg Aff.") at Exhibit A.)

Temco brings this Motion to Dismiss pursuant to CPLR §3211 and CPLR §7503 because Plaintiffs claims are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; Plaintiff has failed to exhaust his administrative remedies pursuant to a collective bargaining agreement; Plaintiff has not and cannot establish that his Union breached its duty of fair representation; and because Plaintiff's alleged discrimination claim is subject to a mandatory grievance and arbitration procedure set forth in a collective bargaining agreement.

### 1. Plaintiff's Claims

Temco provides building maintenance and janitorial services to owners, managers and tenants of commercial and other properties in and around the New York City metropolitan area. Plaintiff was employed by Temco from in or about 2004 until her termination on March 10, 2014.

1

Since at least 2005, Plaintiff was a member of SEIU Local 32B3J (the "Union").

On November 7, 2014, Plaintiff filed the instant Complaint alleging employment discrimination on the basis of gender, national origin, hostile work environment and retaliation in violation of the NYSHRL and the NYCHRL.

## 2. The Collective Bargaining Agreement

At all relevant times Temco was a member of the Realty Advisory Board on Labor Relations, Inc. ("RAB"), a multi-employer bargaining group representing, among others, building maintenance and janitorial service companies in collective bargaining with, among others, Service Employees International Union, Local 32BJ ("Union"). At all times relevant herein, the bargaining unit janitorial service employees of Temco employed in New York City, including Plaintiff, were covered by a collective bargaining agreement ("the Contractors Agreement" or "CBA") between the RAB and the Union which sets forth the terms and conditions governing the employment of bargaining unit employees, including Plaintiff *(See* CBA, which is annexed to Weinberg Aff. as Exhibit

D).

The CBA contains broad grievance and arbitration provisions which are set forth in the Contractors Agreement at Articles V and VI thereof. The CBA provides, at Article V, paragraph 1(b), that the grievance procedure exists to:

endeavor to adjust, without arbitration, any issues between the parties which under the Agreement the parties are obligated to submit to the Arbitrator.

*See* Weinberg Aff. at Exhibit D, page 13. The CBA provides, at Article VI, paragraph 1, that:

There shall at all times be a Contract Arbitrator to decide all differences arising between the parties (the Employer and the Union) as to interpretation, application or performance of any part of this Agreement, and such other issues as the parties are expressly required to arbitrate before him under the terms of this Agreement.

2

*Id.* at page *15.* Paragraph 4 of the arbitration clause provides that the Contract Arbitrator has the broadest possible authority in interpreting the provisions of the CBA:

> The procedure herein outline in respect to matters over which the Arbitrator has jurisdiction shall be the sole and exclusive method of determination of all such issues and said Arbitrator shall have the power to grant any remedy to correct a violation of this Agreement, including, but not limited to damages and mandatory orders... .

*Id* at page 17.

In addition, the CBA contains a provision specifically making claims of discrimination, such as those brought by Plaintiff in this case, subject to the arbitration provisions of the CBA:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, **national origin, sex,** union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to the Title **VII** of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, **the New York State Human Rights Law, the New York City Human Rights Code,** New Jersey Law Against Discrimination, New Jersey Conscientious employee Protection Act, Connecticut Fair Employment Practices Act, or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*Id,* at page 103, Article XIV (General Clauses, No Discrimination), paragraph 30 (emphasis added). Furthermore, following the United States Supreme Court's decision in *14 Penn Plaza LLC v. Pyett,* 556 U.S. —; 129 S. Ct. 1456, 1466 (2009), interpreting and enforcing ***this very same clause,*** federal and state courts in New York have repeatedly dismissed discrimination claims such as those pled by Plaintiff due to the terms of the CBA. *See* cases cited below at pages 10 and 11, *infra.*

As set forth below, all of Plaintiff's discrimination claims are subject to mandatory arbitration and Temco is therefore entitled to an order dismissing the Complaint in its entirety and with prejudice and compelling Plaintiff to arbitrate her claims.

**LEGAL ARGUMENT**

Plaintiff's claims should be dismissed because

       1.      Plaintiff's claims are preempted by the Labor Management Relations Act, 29 U.S.C. § 185;

       2.      Plaintiff has failed to exhaust her administrative remedies pursuant to the CBA;

       3.      Plaintiff cannot demonstrate and does not allege the Union breached its duty of fair representation; and

       4.      Plaintiff's discrimination claims are subject to the mandatory grievance and arbitration procedure set forth in the CBA and should be dismissed as a matter of law.

## I.    PLAINTIFF'S DISCRIMINATION CLAIMS ARE PREEMPTED BY THE LABOR MANAGEMENT RELATIONS ACT ("LMRA")

As set forth below, Plaintiff's claims clearly fall under, are governed by and require the interpretation of the grievance, arbitration and "no discrimination" clauses of the CBA. Because Plaintiff's discrimination claims are substantially dependent on the meaning, significance, and review of the CBA, they are inextricably intertwined with the CBA and therefore preempted by federal labor law.

Section 301 of the LMRA provides that: "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce [ ] may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef Inc.*, 486 U.S. 399, 404 (1988). "Section 301 [preempts state-law] claims founded directly on rights created by collective bargaining agreements, and also claims 'substantially dependent upon an analysis of a collective bargaining agreement'." *Id.* at 410 (quoting *Electrical Workers*

4

*v. Hechler*, 481 U.S. 851, 859, n. 3 (1989)). Any claim that challenges a provision in a CBA,

must be brought under section 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985);

*Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) ("plaintiffs challenge to the lawfulness of

a term of the CBA will require substantial interpretation of the CBA.").

    Plaintiff's claims are therefore preempted by Section 301 and should be dismissed.

## II.    PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES PURSUANT TO THE CBA

    Plaintiff failed to grieve and/or arbitrate her claims as required under the CBA. Any

claims that are governed by the CBA and have not been grieved and/or arbitrated pursuant to the

contract must be dismissed because Plaintiff has failed to exhaust her administrative remedies

pursuant to the CBA.

    The Second Circuit applies a two part test to determine the arbitrability of claims under a

CBA: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at

issue comes within the scope of the arbitration agreement." *Vera v. Saks & Company*, 335 F.3d

109 at 117, (citing *ACE Capitol Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28

(2d Cir. 2002)). It is clear from the language of the broad grievance and arbitration clauses in the

Contractors Agreement that Plaintiff's discrimination and breach of contract claims are arbitrable

under the CBA. As such, Plaintiff is "required to exhaust any grievance or arbitration remedies

provided in the collective bargaining agreement" ***before*** bringing suit against his employer in

federal court. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163

(1983). Here, Plaintiff did not avail herself of the mandatory grievance and arbitration remedies

available to her prior to initiating the instant action, nor does she allege that she has done so.

    As noted in *Vera v. Saks & Company*, 424 F.Supp.2d 694, 704 (S.D.N.Y. 2006), *aff'd*,
206 Fed. Appx. 66 (2d Cir. 2006):

        When the applicable CBA provides for grievance procedures, therefore, these
        procedures are the preferred method of resolving disputes between the employer

and the employee, and unless the employee has exhausted these remedies, a suit under section 301 cannot be maintained. *Republic Steel,* 379 U.S. at 653, 85 S.Ct. 614; *Dougherty v. American Tel. & Tel. Co.,* 902 F.2d 201, 204 (2d Cir. 1990). Inasmuch as Plaintiff has failed to exhaust his administrative remedies with respect to his claims the Complaint should be dismissed.

### A. Plaintiff Does Not Allege That the Union Breached Its Duty of Fair Representation and Her Claims Should Be Dismissed

An exception to the general rule requiring exhaustion of administrative remedies pursuant to the CBA exists only where an employee proves that his union has breached its duty of fair representation to him by failing to prosecute the grievance at all, or by failing to prosecute it properly. *Young v. United States Postal Service,* 907 F.3d 305 (2d Cir. 1990); *Farkas v. Rumore,* 881 F. Supp. 884 (S.D.N.Y. 1995); *see also, DelCostello, supra.* Here, Plaintiff makes no allegation that she attempted to grieve her discrimination claims or that her Union breached its duty of fair representation, and cannot avail herself of this exception to the requirement that she exhaust her administrative remedies. Therefore, the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

## III.   PLAINTIFF'S DISCRIMINATION CLAIMS MUST BE ARBITRATED PURSUANT TO THE CBA

In the event the Court determines that Plaintiff should nevertheless be permitted to proceed, her Complaint should be dismissed because she is obligated to arbitrate her discrimination claims pursuant to the CBA.

In a case involving the very same contract language — and, indeed, the same multi-employer bargaining association and Union — as that involved in the present case, the United States Supreme Court held that a collective bargaining agreement that clearly and unmistakably requires union members to arbitrate statutory claims of discrimination is enforceable as a matter of law, writing:

> The NLRA provided the Union and the RAB with statutory authority to

> collectively bargain for arbitration of workplace discrimination claims, and
> Congress did not terminate that authority with respect to federal age-
> discrimination claims in the ADEA. Accordingly, there is no legal basis for the
> Court to strike down the arbitration clause in the CBA, which was freely
> negotiated by the Union and the RAB, and which clearly and unmistakably
> requires respondents to arbitrate the age-discrimination claims at issue in this
> appeal. Congress has chosen to allow arbitration of ADEA claims. The Judiciary
> must respect that choice.

*14 Penn Plaza LLC v. Pyett,* 556 U.S. --, 129 S. Ct. 1456, 1466 (2009).

Following the Court's opinion in *Pyett,* federal and state courts in New York have

compelled arbitration of statutory discrimination claims under the NYSHRL and NYCHRL

where such claims are the subject of mandatory arbitration pursuant to collective bargaining

agreements. *See Greene v. American Building Maintenance,* No. 12 -cv- 4899 (DLI) (LB),

2013 WL 4647520, *3 (E.D.N.Y. August 28, 2013) ("Should Plaintiff wish to pursue his claims

further, he must first utilize the grievance and arbitration procedures set forth in the CBA");

*Mussafi v. Fishman,* No. 12 -cv- 2071 (JGK), 2012 WL 5473874 (S.D.N.Y. Nov. 12, 2012);

*Bouras v. Good Hope Management Corp.,* No. 11 -cv- 8708 (WHP), 2012 WL 3055864, *4

(S.D.N.Y. July 24, 2012) (granting dismissal of Plaintiff's Complaint, holding that that *Pyett*

and the identical CBA presented in the instant case "clearly and unmistakably requires arbitration

of Bouras's Title VII Claim"); *see also Gildea v. Bldg. Management,* 10-cv- 03347, 2011 WL

4343464 (S.D.N.Y. Aug. 16, 2011); *Cukovic v. Temco Service Industries, Inc.,* 09-cv-6233

(AKH) (S.D.N.Y. July 30, 2010) (unreported decision); *Duraku v. Tishman Speyer Properties,*

*Inc.,* 714 F. Supp.2d 470 (S.D.N.Y. 2010) (holding that plaintiff's statutory discrimination

claims are subject mandatory arbitration pursuant to the CBA); *Johnson v. Tishman Speyer*

*Properties, L.P.,* 09 -cv- 1959 (WHP), 2009 WL 3364038 (S.D.N.Y. Oct. 16, 2009); *Borrero v.*

*Ruppert Housing Co.,* 08-cv-5869 (HB), 2009 WL 1748060 (S.D.N.Y. June 19, 2009);

*Shipkevich* v. *Staten Island Univ. Hosp.,* 08-cv-1008 (FB), 2009 WL 1706590 (E.D.N.Y. June 16,

2009); *Johnson, supra; Rodriguez v. Four Seasons Hotels, Ltd.,* 09-cv-2864 (DLC), 2009 WL 2001328 at *3 (S.D.N.Y. July 10, 2009); *Fletcher v. Kidder,* Peabody & Co., 91 N.Y.2d 623, 601 N.Y.S.2d 686, 619 N.E.2d 998, 1003 (1993); *Sum v. Tishman Speyer Properties, Inc.,* 37 A.D.3d 284, 829 N.Y.S.2d 507 (1st Dept. 2007); *Perunovic v. East Midtown Plaza,* Supreme Court of the State of New York, New York County, Index No. 654052/2012 (Kern, J.S.C., July 25, 2013); *Prendergast v. 970 Park Avenue Owners Corp.,* Supreme Court of the State of New York, New York County, Index No. 110113/10 (Kenney, J.S.C., February 24, 2011). As set forth in *Johnson, supra:*

> While Section 3 of the [Federal Arbitration Act] requires a district court to stay proceedings where an issue before it is arbitrable under an agreement, "courts have the discretion to dismiss — rather than stay — an action when *all* of the issues in it must be arbitrated." *Milgrim v. Backroads, Inc.,* 142 F. Supp. 2d 471, 476 (S.D.N.Y. 2001) (emphasis added).

*Johnson, supra* at *4 (holding that because all of plaintiff's claims must be arbitrated pursuant to CBA, "no useful purpose will be served by granting a stay of ... [the] claims and the case may be dismissed" (citing *Alemac Ins. Serv., Inc. v. Risk Transfer, Inc.,* 09-cv-1162 (WHP), 2003 WL 22024070 at *3 (S.D.N.Y. Aug. 28, 2003)).

All of Plaintiff's claims must be arbitrated and no useful purpose would be served by staying, rather than dismissing Plaintiff's Complaint.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

Dated: New York, New York
December 21, 2014

Respectfully submitted,

LAW OFFICES OF HARRY WEINBERG

By:
Harry Weinberg
Attorney for Defendant
292 Madison Avenue — 16th Floor
New York, N.Y. 10017
(212) 889-4100
Email: harryesq@aol.com

# Appendix B

Case Caption:    **Aferdita Collaku - v. - Temco Service Industries, Inc.**

Judge Name:    **Nancy Bannon**

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 1 | PETITION | Processed | 04/06/2018 | Krakower, T. |
| 2 | EXHIBIT(S)<br>Arbitrator's Award | Processed | 04/06/2018 | Krakower, T. |
| 3 | EXHIBIT(S)<br>Summons and Complaint | Processed | 04/06/2018 | Krakower, T. |
| 4 | EXHIBIT(S)<br>Hearing 12-20-16 | Processed | 04/06/2018 | Krakower, T. |
| 5 | EXHIBIT(S)<br>Hearing 12-22-16 | Processed | 04/06/2018 | Krakower, T. |
| 6 | EXHIBIT(S)<br>Hearing 4-24-17 | Processed | 04/06/2018 | Krakower, T. |
| 7 | EXHIBIT(S)<br>Hearing 4-27-17 | Processed | 04/06/2018 | Krakower, T. |
| 8 | EXHIBIT(S)<br>Hearing 6-1-17 | Processed | 04/06/2018 | Krakower, T. |
| 9 | EXHIBIT(S)<br>Hearing 6-22-17 | Processed | 04/06/2018 | Krakower, T. |
| 10 | NOTICE OF PETITION ACCOMPANYING<br>COMMENCEMENT DOC(S) | Processed | 04/06/2018 | Krakower, T. |
| 11 | RJI -RE: NOTICE OF PETITION | Processed | 04/06/2018 | Krakower, T. |
| 12 | EXHIBIT(S)<br>Arbitration Joint Exhibit - Contractor's Agreement | Processed | 04/12/2018 | Krakower, T. |
| 13 | EXHIBIT(S)<br>Arbitration Petitioner Ex 1 - Summons and Complaint | Processed | 04/12/2018 | Krakower, T. |
| 14 | EXHIBIT(S)<br>Arbitration Petitioner Ex 2 - 2004 Sexual Harassment<br>Policy | Processed | 04/12/2018 | Krakower, T. |
| 15 | EXHIBIT(S)<br>Arbitration Petitioner Ex 4,5 - R Shtylla Notes | Processed | 04/12/2018 | Krakower, T. |
| 16 | EXHIBIT(S)<br>Arbitration Petitioner Ex 6 - R Shtylla Notes Translation | Processed | 04/12/2018 | Krakower, T. |
| 17 | EXHIBIT(S)<br>Arbitration Respondent Ex 1 - Employee Instructions | Processed | 04/12/2018 | Krakower, T. |
| 18 | EXHIBIT(S)<br>Arbitration Respondent Ex 2a - Unemployment Hearing<br>Day 1 | Processed | 04/12/2018 | Krakower, T. |
| 19 | EXHIBIT(S)<br>Arbitration Respondent Ex 2b - Unemployment Hearing<br>Day 2 | Processed | 04/12/2018 | Krakower, T. |
| 20 | EXHIBIT(S)<br>Arbitration Petitioner Ex 7 - 12-9-09 Lawless Memo | Processed | 04/12/2018 | Krakower, T. |

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 21 | EXHIBIT(S)<br>Arbitration Petitioner Ex 8 - Unemployment Decision | Processed | 04/12/2018 | Krakower, T. |
| 22 | ADMISSION OF SERVICE | Processed | 04/19/2018 | Krakower, T. |
| 23 | COURT NOTICE | Processed | 04/30/2018 | Court User |
| 24 | NOTICE | Processed | 05/16/2018 | Court User |
| 25 | NOTICE OF REMOVAL / REMAND (POST RJI) | Processed | 05/23/2018 | Weinberg, H. |
| 26 | DECISION + ORDER ON MOTION | Processed | 08/21/2018 | Court User |
| 27 | NOTICE OF ENTRY<br>Decision and Order dated August 17, 2018 | Processed | 08/29/2018 | Weinberg, H. |