USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/26/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
AFERDITA COLLAKU,                                              :
                                                               :
                                    Petitioner,                :
                                                               :   18-CV-4054 (VEC)
                 -against-                                     :
                                                               :   MEMORANDUM
TEMCO SERVICE INDUSTRIES, INC.,                                :   OPINION AND ORDER
                                                               :
                                    Respondent.                :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Petitioner Aferdita Collaku ("Collaku") seeks to vacate an arbitration award dismissing her employment discrimination and retaliation claims against Respondent Temco Service Industries, Inc. ("Temco"). Temco has cross-petitioned to confirm the award. Collaku argues that the arbitrator violated Section 301 of the Labor Management Relations Act ("LMRA") by failing to issue a final ruling on Collaku's discrimination claim. Although the award's conclusion could have been clearer about what claims the arbitrator had adjudicated, the Court finds that the arbitrator did reach a final ruling on Collaku's discrimination claim. The fact that the award is not a model of clarity does not warrant vacatur. The Court therefore denies the petition and confirms the award.

## BACKGROUND

Collaku first filed her retaliation and discrimination claims against Temco in New York State Supreme Court; in response to a motion to compel arbitration, the parties agreed to stay the Supreme Court action and to arbitrate her claim pursuant to the collective-bargaining agreement ("CBA") between Temco and Collaku's union. Verified Pet'n (Dkt. 5, Ex. 2) ¶¶ 13−16; *see*

Agreement (Dkt. 5, Ex. 12) at 15–20. The arbitrator entered an award in January 2018. Opinion and Award ("Award") (Dkt. 5, Ex. 4) at 17.

In the arbitration, Collaku alleged that while she was working for Temco one of her coworkers, Rexhep Shtylla, harassed her based on her gender. Am. Pet'n (Dkt. 28) ¶ 34. Collaku also alleged that her supervisors at Temco never responded to her frequent complaints about Shtylla's behavior. Award at 8. The conflict between Collaku and Shtylla culminated in a physical fight, which each asserted the other started. *Id.* at 3–4. After this incident, Collaku's supervisors terminated her, which Collaku alleged was retaliation for her earlier complaints. *Id.* at 9.

Collaku asserted two claims in the arbitration: (1) a gender discrimination claim under the New York City Human Rights Law ("NYCHRL") based on Shtylla's harassing comments, Temco's non-responsiveness to Collaku's complaints, and her termination; and (2) a retaliation claim under the NYCHRL arising from her termination.[1] Pet'r's Br. (Dkt. 30) at 8–12. Citing inconsistencies in Collaku's account and weak corroborating witness testimony, the arbitrator ruled against Collaku, finding that her allegations about Shtylla's comments and assault were unsubstantiated. Award at 12–16.

Collaku moved to vacate the arbitrator's decision in state court asserting a state cause of action. *See* Verified Pet'n ¶ 5. Temco removed the case to federal court. Dkt. 1. When Collaku moved to remand, Temco argued that vacatur of an arbitration award issued pursuant to a CBA is properly asserted as a federal cause of action under Section 301 of the LMRA. Resp't's Opp. to Pet'r's Mot. to Remand (Dkt. 14) at 1. This Court agreed and ordered Collaku to amend her

---

[1] Collaku voluntarily withdrew a third claim of national origin discrimination. Award at 1–2.

petition to plead a claim under the LMRA. *See* Opinion & Order (Dkt. 16) at 15 (denying Petitioner's motion to remand).

The Court now considers the merits of Petitioner's Section 301 claim that the arbitrator failed to properly execute her authority under the CBA by failing to rule on Collaku's claim of gender discrimination.

## DISCUSSION

Subject to few exceptions, "a court's review of an arbitration award is severely limited so as not to frustrate the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *United Bhd. of Carpenters and Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 274–75 (2d Cir. 2015) (quotation omitted). Courts cannot vacate arbitration awards for factual or legal error as long as the arbitrator is "even arguably construing or applying the contract within the scope of [her] authority"; in other words, the award only faces the possibility of vacatur when the arbitrator "strays from interpretation and application of the agreement [to] dispense [her] own brand of industrial justice." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509–10 (2001) (per curiam) (quotation omitted).

An arbitration award must be confirmed "even if it contains factual errors or erroneous interpretations of contract provisions." *Tappan Zee Constructors*, 804 F.3d at 274 (quotation omitted). Review is limited to "whether the arbitrator acted within the scope of [her] authority as defined by the collective bargaining agreement." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). Unless there is a valid statutory basis to vacate, modify, or correct the award, courts "must grant" a petition to confirm the award. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting 9 U.S.C. §

9). The "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *Id.*

Despite this high bar, courts may vacate an arbitration award, as pertinent here, when an arbitrator has "exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Tully Constr. Co./A.J. Pegno Constr. Co., J.V. v. Canam Steel Corp.*, No. 13-CV-3037, 2015 WL 906128, at *5 (S.D.N.Y. Mar. 2, 2015) (quoting 9 U.S.C. § 10(a)(4)); *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) ("[F]ederal courts have often looked to the [Federal Arbitration Act] for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the [LMRA] . . . empowers the federal courts to fashion rules of federal common law to govern [employee contract disputes].").[2]

## I. The Arbitrator Ruled on Petitioner's Discrimination Claim

Collaku argues that the award should be vacated under 9 U.S.C. § 10(a)(4) because the arbitrator did not analyze and render a final decision on Collaku's gender discrimination claim. Pet'r's Br. at 5. Collaku argues that the arbitrator ruled only on her retaliation claim as it relates to her termination. *Id.* at 6–7. In support, Collaku points to two sentences in the award: a sentence in the award's concluding section that "[t]he Employer did not violate the NYCHRL *by terminating* the [Petitioner]," Award at 16 (emphasis added); *see* Pet'r's Br. at 7; and a sentence in an earlier section that Collaku "has failed to establish she was *terminated* in violation of the

---

[2] Although Collaku mentions that it is a ground for vacatur if the arbitrator manifestly disregards the law, the Court does not find that ground applicable to this case. *See* Pet'r's Br. at 5. Proving manifest disregard requires a showing that the governing law on the issue was "well defined, explicit, and clearly applicable," and that the arbitrator "appreciate[d] the existence" of that law, but "decide[d] to ignore or pay no attention to it." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 209 (2d Cir. 2002) (quotation omitted). Here, the arbitrator did not reach the question of how to apply the law because she determined that Collaku's testimony was not credible and thus no discriminatory behavior occurred. *See* Award at 14 ("While [Petitioner] asserts even one incident of sexually harassing behavior can subject an employer to liability, in this case, I find no such behavior occurred.").

NYCHRL based upon either her gender or in retaliation for opposing discriminatory conduct."[3] Award at 11 (emphasis added); *see* Pet'r's Br. at 7–8.

The phrasing of these two sentences does not mean that the arbitrator failed to reach a final decision on Collaku's claim of pre-termination discrimination, and the award's unclear language is not a basis to vacate it. An arbitration award should be confirmed if there is a "barely colorable justification for the outcome reached." *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (quotation omitted). Even where the "precise rationale" for the decision is "difficult [] to discern," an award should not be vacated if any "plausible reading" of the substance supports the arbitrator's conclusions. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 391–92 (2d Cir. 2003). To warrant vacatur, the award must "cross[] the line from confus[ing] to inexplicabl[e]." *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 132 (2d Cir. 2003). In isolation the two sentences might suggest that the arbitrator did not address Collaku's claim that she was discriminated against because of her gender prior to being terminated, but the rest of the award shows the opposite.

Although the award is confusing at times, it addresses the pre-termination discrimination claim at several points. *See* Award at 11–16. The mere fact that the arbitrator omitted specific mention of the pre-termination discrimination claim in her concluding sentence dismissing all claims does not render this award inexplicable. During the arbitration, Collaku pressed two theories in support of her gender discrimination claim: that Shtylla harassed her based on her gender, Pet'r's Br. at 9–11; and that her supervisor took her complaints less seriously than those

---

[3] Because Collaku also asserted in arbitration that she suffered gender discrimination as a result of her termination—in addition to pre-termination gender discrimination—it is not entirely clear what part of her gender discrimination claim Collaku argues the arbitrator ignored. In any event, this sentence in the award, on which Collaku relies, explicitly disposes of any gender discrimination claim related to her termination.

made by a male coworker and punished her more harshly for the same conduct. *Id.* at 11–12. The arbitrator addressed both theories throughout the award.

As to Collaku's first theory, the arbitrator acknowledged Collaku's argument, accepted her position on the governing law, but then rejected her factual allegations. The arbitrator first echoed Petitioner's legal argument, stating that "even one incident of sexually harassing behavior can subject an employer to liability." Award at 14; *see* Pet'r's Br. at 10. The arbitrator then found that "neither [co-worker] Donika nor team member Kat who testified corroborated [Collaku's] assertions" about Shtylla's crude mistreatment of her. Award at 11–12. And with respect to the fight, the arbitrator found that the most persuasive evidence established that Petitioner "hurled the first insult" in what amounted to a mere "heated argument." *Id.* at 15. The arbitrator based this conclusion on testimony from another co-worker, whom the arbitrator believed to be the most credible witness to the incident. *Id.* at 14–15. The arbitrator thus concluded that "no [sexually harassing] behavior occurred." *Id.* at 14.

The arbitrator likewise discussed legal and factual conclusions pertinent to Collaku's second theory of discrimination. The arbitrator summarized Collaku's position that her "numerous attempts to complain were met with silence," while just one complaint from Shtylla prompted an investigation. *Id.* at 8. Based on the evidence and credibility of the witnesses, the arbitrator found Collaku's position to be meritless. *Id.* at 12. For example, the arbitrator found unpersuasive Collaku's claim that she was unable to report her allegations against Shtylla to her supervisor—"the credible record evidence established [Petitioner] spoke with [the supervisor] at least once per week by phone on Friday evening to deal with payroll." *Id.* The arbitrator also

made by a male coworker and punished her more harshly for the same conduct. *Id.* at 11–12. The arbitrator addressed both theories throughout the award.

As to Collaku's first theory, the arbitrator acknowledged Collaku's argument, accepted her position on the governing law, but then rejected her factual allegations. The arbitrator first echoed Petitioner's legal argument, stating that "even one incident of sexually harassing behavior can subject an employer to liability." Award at 14; *see* Pet'r's Br. at 10. The arbitrator then found that "neither [co-worker] Donika nor team member Kat who testified corroborated [Collaku's] assertions" about Shtylla's crude mistreatment of her. Award at 11–12. And with respect to the fight, the arbitrator found that the most persuasive evidence established that Petitioner "hurled the first insult" in what amounted to a mere "heated argument." *Id.* at 15. The arbitrator based this conclusion on testimony from another co-worker, whom the arbitrator believed to be the most credible witness to the incident. *Id.* at 14–15. The arbitrator thus concluded that "no [sexually harassing] behavior occurred." *Id.* at 14.

The arbitrator likewise discussed legal and factual conclusions pertinent to Collaku's second theory of discrimination. The arbitrator summarized Collaku's position that her "numerous attempts to complain were met with silence," while just one complaint from Shtylla prompted an investigation. *Id.* at 8. Based on the evidence and credibility of the witnesses, the arbitrator found Collaku's position to be meritless. *Id.* at 12. For example, the arbitrator found unpersuasive Collaku's claim that she was unable to report her allegations against Shtylla to her supervisor—"the credible record evidence established [Petitioner] spoke with [the supervisor] at least once per week by phone on Friday evening to deal with payroll." *Id.* The arbitrator also

did not credit the factual underpinnings of Collaku's claim that Temco treated her worse than male employees who had been in fights. *Id.* at 16.[4]

Petitioner offers no reason or authority why the "mutual, final, and definite" award of an arbitrator is limited to the explicit pronouncements of the award's concluding section. 9 U.S.C. § 10(a)(4). It is, of course, settled law that the arbitrator's "award" encompasses the entire written decision. *See Tappan Zee Constructors*, 804 F.3d at 273 ("Arbitrator Pierson issued his short-form award in a four-page decision titled 'AWARD'"). In this case, the arbitrator addressed Collaku's pre-termination discrimination claim in the body of the award and did not credit any of Collaku's relevant testimony. Failing to reference the claim in the award's concluding section does not mean the arbitrator ignored it, and certainly does not render the award "inexplicabl[e]." *Hardy*, 341 F.3d at 132.

## CONCLUSION

For the foregoing reasons, the petition to vacate is DENIED and the cross-petition to confirm is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Date: **November 26, 2019**
      New York, New York

**VALERIE CAPRONI**
**United States District Judge**

---

[4] Regardless of the ultimate accuracy of the arbitrator's credibility determinations, "[t]his Court does not have the authority to revisit credibility determinations made by the arbitrator." *St. Barnabas Hosp. v. 1199SEIU United Healthcare Workers E.*, No. 16-CV-4117, 2016 WL 4146143, at *3 (S.D.N.Y. Aug. 2, 2016).